NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK (CBN 149883)
Assistant United States Attorney
Chief, Asset Forfeiture Section
    312 North Spring Street, 14th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-6166
    Facsimile: (213) 894-0142
    E-mail: Steven.Welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>REAL PROPERTY LOCATED AT 14600 INNOVATION DRIVE, RIVERSIDE, CALIFORNIA,<br><br>    Defendant.<br><br>SCUDERIA DEVELOPMENT, LLC,<br><br>    Claimant. | NO. EDCV 17-1875 DMG (SPx)<br><br>**GOVERNMENT'S OPPOSITION TO CLAIMANT'S *EX PARTE* APPLICATION TO CONTINUE GOVERNMENT MOTION FOR INTERLOCUTORY SALE OF DEFENDANT PROPERTY; DECLARATION OF AUSA STEVEN R. WELK**<br><br>[A proposed order is lodged contemporaneously herewith] |

/ / /

/ / /

1

Plaintiff United States of America ("the government") hereby opposes the *ex parte* application of Claimant Scuderia Development, LLC ("Claimant") to continue the hearing on the government's motion for interlocutory sale of the defendant property, filed on March 2, 2020, and set for hearing on April 3, 2020.[1]

### The Meet and Confer Process

In compliance with the Local Rules, government counsel invited defense counsel (Mr. Larson and Ms. Potashner) to meet and confer concerning the motions for interlocutory sale. The in-person meeting of counsel occurred on January 24, 2020. *See* Declaration of AUSA Steven R. Welk at ¶2. During that meeting, government counsel explained that he intended to move for the interlocutory sale of all four of the defendant properties in the Warehouse Cases based on the fact that each of the Claimants was in default on more than two years of property taxes on the properties. *Id.*

A little over a month later, on February 27, government counsel sent an email to Claimants' counsel in an attempt to reach agreement on a mutually convenient date for the hearings on the government's motions. Later that day, Mr.

---

[1] This action is one of four separate but related civil forfeiture actions arising from identical material facts against commercial warehouses: *United States v. Real Property Located at 1001 S. Doubleday Avenue, Ontario, California*, EDCV 17-1873 DMG (SPx) (Claimant – 1001 Doubleday, LLC); *United States v. Real Property Located at 10681 Production Avenue, Fontana, California*, EDCV 17-1872 DMG (SPx) (Claimant – 10681 Production Avenue, LLC*); United States v. Real Property Located at 14600 Innovation Drive, Riverside, California*, EDCV 17-1875 DMG (SPx) (Claimant – Scuderia Development, LLC); and *United States v. Real Property Located at 2323 Main Street, Irvine, California*, SACV 17-1592 DMG (SPx) (Claimant – Von Karman-Main Street, LLC) (collectively, the "Warehouse Cases"). The Claimants in the four cases are referred to collectively herein as "Claimants." Except for the first paragraph of each filing, the government's opposition briefs in response to the Claimants' *ex parte* applications in the Warehouse Cases are identical.

2

Larson stated "I can do April 3." *See* exhibit A to the Welk Decl. Government counsel filed its motions on March 2, setting them for hearing on April 3.

### *Ex Parte* Notice

On March 9, AUSA Welk spoke by telephone with A. Alexander Lowder, another attorney for Claimants, who was seeking a continuance of "three or four weeks" of the hearings on the government's motions, purportedly so that Claimants could provide the Court with as complete a picture as possible of the facts and circumstances relating to the defendant warehouses, allowing the Court to make a more fully informed decision. AUSA Welk pointed out to Mr. Lowder that (1) the tax defaults on all four of the properties are a matter of public record, as indicated by the screen shots included as exhibits attached to the interlocutory sale motions; (2) the tax defaults total millions of dollars and represent secured debts against the defendant properties; and (3) Claimants, as the title holders of the properties, were necessarily aware of their own failure to remain current on their taxes, and were in a unique position to know that they were in default. *Id.* at ¶4.

Nevertheless, AUSA Welk advised Mr. Lowder that, in light of Mr. Lowder's representation that the Claimants' purpose in requesting additional time was to provide the Court with all pertinent information relating to the warehouses, the government would stipulate to extend the hearings on the motions for two weeks if the Claimants agreed to include in their respective opposition papers a declaration from a representative of each Claimant stating what income, if any, each Claimant is and has been collecting, as rent or otherwise, in connection with each warehouse property. AUSA Welk further explained that the government had reason to believe that the Claimants have been collecting substantial rent on the warehouses while simultaneously refusing to pay the property taxes or satisfying the civil contempt orders entered against them by Judge Klausner in *United States v. Liu*. *Id.* at ¶5.

Mr. Lowder advised that he was unwilling to provide such an assurance or make such an agreement. *Id.* at ¶6.

## Argument

In their *ex parte* applications, Claimants seek to continue the hearings on the interlocutory sale motions from April 3 until May 1, 2010, giving them an additional four weeks to craft a response to the motions. They contend that they have satisfied the "good cause" requirement of Federal Rule of Civil Procedure 6(b) because "the issues at hand are fact-intensive, and require significant factual and legal research and analysis." March 9 *Ex Parte* Application at 3. They argue that the government "has failed to provide the Court with sufficient information regarding the value of the properties and their current status to determine whether interlocutory sales are appropriate." Finally, they argue that "the government will not be prejudiced by continuing the hearing and opposition dates by four weeks," and that "the government has not produced any evidence that shows that the equity of the property would be subsumed by owed property taxes at all, let alone within the next month or so." *Id.* at 3-4.

Each one of these contentions is provably false.

First, to the extent the issues presented by the government's motions are fact-intensive (and the government disputes this proposition), the material facts are uniquely within the knowledge of the Claimants, who are the owners of the properties and the parties directly responsible for their respective failure and refusal to pay the property taxes owed on the defendant properties for tax years 2017, 2018 and 2019. Further, government counsel advised current defense counsel of the factual and legal grounds for the motions on January 24, more than a month before the motions were filed, giving Claimants and their attorneys *six weeks* to conduct the necessary factual and legal investigation into the bases for the government's motions before their oppositions were due. Claimant's conclusory

statement that they need additional time to investigate the government's contentions suggest nothing more than an attempt to cause further delay.

Second, the suggestion that the Claimants' concern here is to remedy the government's failure to provide the Court with sufficient information concerning the value and "current status" of the properties is belied by two indisputable facts: first, the government's papers provide detailed explanations of the Claimants' failure to pay their taxes, supported by screen shots of open source information available on the Internet; and second, Claimants seem to believe that their own collection of income generated by the properties is not among the aspects of "current status" that would inform the Court's determination of the government's motions.

Third, neither the value of the properties nor the amount of unpaid taxes relative to that value are material here. The authority relied upon by the government authorizes the interlocutory sale of property where the claimant has failed to remain current on taxes. As demonstrated by the chart below, not only are the Claimants delinquent for millions of dollars in property taxes on the warehouses, the amount of unpaid taxes due on the warehouse here will increase substantially on April 10 by a total of *$289,593.36*, representing a cumulative secured delinquency of *$2,090,499.61*. This drop in value is highly prejudicial to the government, because it represents a substantial drain on property that the government seeks to forfeit. Claimants, on the other hand, have demonstrated utter disregard for protecting the value of the warehouses. The total tax debt for all four of the properties as of April 11 will be $7,389,837.11.

/ / /
/ / /
/ / /
/ / /
/ / /

| Warehouse | Amount of Unpaid Taxes (With Interest and Penalties) as of March 4, 2020 | Tax Payment Due on April 10, 2020 | Total Taxes to be Owed on April 11, 2020 |
|---|---|---|---|
| 10681 Production Avenue, Fontana, California | $2,541,542.70 | $500,374.13 | $3,041,916.83 |
| 2323 Main Street, Irvine, California | $707,376.12 | $126,027.49 | $833,403.61 |
| 1001 S. Doubleday Avenue, Ontario, California | $1,222,169.30 | $201,847.76 | $1,424,017.06 |
| 14600 Innovation Drive, Riverside, California | $1,800,906.25 | $289,593.36 | $2,090,499.61 |
| **TOTALS** | **$6,271,994.37** | **$1,117,842.74** | **$7,389,837.11** |

The *Liu* sanctions against each of the Claimants will also continue to accrue at the rate of $8,000.00 per day, meaning that by the time of the requested hearing date, each of the Claimants will have incurred additional sanctions as reflected below.

| Claimant | Amount of Sanctions Accrued as of March 4, 2020 | Additional Sanctions Due as of May 1, 2020 |
|---|---|---|
| 10681 Production Avenue, LLC | $628,000.00 | $464,000.00 |
| Von Karman-Main Street, LLC | $628,000.00 | $464,000.00 |
| 1001 Doubleday, LLC | $628,000.00 | $464,000.00 |
| Scuderia Development, LLC | $700,000.00 | $464,000.00 |
| **TOTALS** | **$2,584,000.00** | **$1,856,000.00** |

Neither the physical size nor total value of the defendant properties changes the fact that these properties are hemorrhaging value *every day* due to nothing more than the Claimants' calculated and years-long refusal to comply with basic obligations flowing from the ownership of real property. That they may be simultaneously collecting substantial rents for these properties (and likely have been doing so for some significant period of time) is obviously an aspect of the "current status" of the properties that the Claimants purport to be seeking to provide to the Court.

## Conclusion

For all of these reasons, the government requests that the Claimants be given one additional week to respond to the government's motions, continuing the hearings on the motions to April 10, 2020, and that the Court order each of the Claimants to include with their filed opposition a declaration from an identified and authorized representative stating what income each property has generated (in rents or otherwise) since the filing of the complaint in each action, and the source of such income. A proposed order is lodged contemporaneously herewith.

DATED: March 10, 2020

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

    /s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA